Ruffin, C. J.
 

 In 1835 the Legislature granted certain lands, situate in the County of Haywood, to the Justices of the County Court, in trust for the county and to be sold for the benefit of the County, upon terms to be determined by the County Court. In. 1836, the lands were offered
 
 for sale; and,
 
 among the terms established by the court, a right of pre-emn
 
 *377
 
 tion was allowed to persons then living on the tracts — but upon what particular conditions is not stated in the pleadings or proofs. At the sale the defendant, Cunningham, became the purchaser of 115 acres of land
 
 (oí
 
 which Robert Herron was an occupant) at the price of thirty-seven and an half cents per acre, of which he paid one fourth down, and gave his three bonds for the other three fourths, payable* in ode, two and three years; and Robert Herron also executed those bonds, as the surety of Cunningham.
 

 The bill states, that the plaintiff is the son of Robert I-Ierron, and that the latter was entitled to the pre-emption of the said land, and before the sale transferred it to or waived it in favour of the plaintiff. But that the plaintiff was an inlant at the' time, aud the commissioners refused to receive his bid; and that thereupon he applied to' Cunningham to purchase the land for him, the plaintiff; and that Cunningham', with the consent of the plaiutiff’s father, agreed to do’so, and to allow the plaintiff to make the payments, and, when they should have been made, to convey the' land to the plaintiff. The' bill further states, that Cunningham accordingly bid off the land, as the agent of the plaintiff and for' his benefit; and that immediately afterwards the plaintiff put into Cunningham’s hands the money to make the payment required downj5 and, subsequently, and before the second instalment of $10
 
 78$,
 
 fell due,- he also put into his hands monéy to pay that. The bill then charges, that Cunningham denied having made a contract with the plaintiff, or that it was obligatory on him by reason of the plaintiff’s infancy, and had subsequently agreed with the plaintiff’s father, Robert Herron, foil the purchase of the equitable title from him; and hath, since, obtained a deed from the county, and refuses to convey
 
 to
 
 the' plaintiff, although the latter' had offered to pay the residue of the' purchase money. The prayer is, that the' defendant, Cunningham,-may be declared a trustee for the plaintiff; and that an account may be taken of the sum due for principal and interest of the purchase money, and also of the rents and profits received by Cunningham, and that, upon payment of the balance, if any, by the plaintiff, the defendant may be decreed to convey to him.
 

 
 *378
 
 The answer states that Robert Herron, who was entitled Pre-emPt^onJ was considerably indebted and insolvent; and, in consequence thereof, he stated to the defendant on the of sale, that, although he wanted the land, he could not bid it off, because his creditors would immediately seize it; and, therefore, he requested the defendant to purchase it for him. This the defendant admits he agreed to do, and to convey the land to Robert Herron upon his paying the purchase money; and he states, that thereupon the said Robert drew from his pocket one fourth of the purchase money, and delivered it to the defendant; and the defendant made the purchase, and paid the first instalment on that day, and gave bonds for the others as already stated. The answer denies, that the defendant made any contract with the plaintiff to purchase for him, or that any thing whatever passed between them, before or at the sale, on the subject. But .it states, that, after the sale was completed, and Robert Herron and the defendant were returning home together, the former asked the latter whether he would not be willing to make the title to his son Anderson, the present plaintiff, provided he paid the purchase money; and the defendant replied, that he would. The answer then admits, that, before the first note fell due, the defendant received from the plaintiff ten dollars to be paid on that note, but states, that before the time of payment arrived, Robert, the father, after having often done so before, proposed to sell the land to the defendant, and that they fi. nally agreed upon the following terms; That the defendant should pay the three notes to the county, should return to the plaintiff the sum often dollars received from him, and should pay to Robert, the father, fifty dollars for the equitable right; and that he accordingly made the payments to the county and to the father, and offered it also to the plaintiff, who refused to receive it. The answer insists that the beneficial interest in the premises was in the said Robert Herron and never belonged to the plaintiff.
 

 Replication was taken to the answer, and the parties proceeded to take their proofs, and on the hearing in the Court of Equity for Haywood, it was declared that the defendant purchased the premises, at the sale made by the
 
 commission
 
 
 *379
 
 ers, for the plaintiff, and was a trustee for him; and there was a decree that fhe defendant should convey to the plaintiff, upon the payment of the balance of the purchase money and interest. And the defendant appealed.
 

 Very voluminous depositions have been taken and sent up in the record; but it is not deemed necessary to advert to them particularly, as but a small portion of them is material to the point on which the cause turns, as it strikes us.
 

 The plaintiff has taken the, deposition of his father; and if the court were at liberty to yield full faith to it, we should considerthestatementsofthe bill established. The witness denies that he was in debt or afraid from any such cause to purchaseinhisown name; and hesays, that, before the sale, he relinquished to his son the pre-emption of the land for the purpose of advancing his son, and that the only reason why the son did not purchase was because he was an infant and could not give bond: that, such being the case, they, the farther and son, together, applied to the defendant to become theljpurchaser in his name, but for the benefit of the son; and that the defendant agreed to do so and did so, and agreed to convey to the son upon the purchase money being paid. The witness also states that, to enable the defendant to make the purchase, he, the witness, advanced ta him the first instalment, which he gave to his son, because he had worked for money to pay the father’s debts. The witness further states, that this contract was made in the presence of no person, but himself. And he admits that, during the next year, he sold the land to Cunningham and received $50 for his right; but he says, he had no right, and did not claim any in the land, and that Cunningham bought at his own risk.
 

 The material difference between the contract stated in the bill and by this witness, and that stated in the answer is, that the former is an original, distinct, and complete agreement between the plaintiff personally and the defendant, that the latter should purchase for the former and with money advanced by the plaintiff; and on a declaration of the truth of that allegation, the decree is founded; whereas the statement of the answer is, that the money advanced to the defendant at the purchase was the money of the father, was advanced by the
 
 *380
 
 father, and the contract of the defendant was altogether with ^ie fatl'ier mrd for his benefit; and therefore, that if the plaintiff have any right, he must have derived it under the father subsequent to the sale. It is obvious, that those contracts are different, being made with different persons. Now, Robert Herron is the only witness who speaks of such a contract between the defendant and the plaintiff; and even he admits, that the son did not pay the money, but that he paid it. This single witness cpuld not over-rule the positive denial of the answer on this point, were there nothing particular against the witness. But, besides the shock given to his credit by his admitted sale of theverylandindisputeto the defendant, his character is stated-by many witnesses to be such, ,as not to entitle him to belief on his oath. And above all, another witness, who is unimpeached, states, in .conformity with the answer, that, on the evening of the day of sale, as the parties were returning home from the sale, Robert Herron applied to the defendant to know, if he would not as willingly convey to the son as to the father. We, are obliged, therefore, to reverse the declaration, that the defendant purchased for the plaintiff, and to declare that he purchased for the plaintiffs father; and, consequently, the plaintiff cannot have a decree, because there is nothing in his bill to show how the title, thus placed in the father, was derived by hirp. The defendant admits a case in the answer, bn which, perhaps, if stated in the,bill and admitted or proved, the plaintiff might have had relief, but we cannot anticipate what defepces the answer might have set up to such a case, if made in the bill; and the answer does not submit to any decree in favour of the plaintiff upon the transaction, as stated by the defendant, The allegations and proofs of the plaintiff do not, therefore, correspond, as they ought to do, to enable us to relieve him, without danger of surprise on the other party. A bill cannot be founded on a contract made with the plaintiff, and the decree founded on a contract made with another person and coming to the plaintiff by assignment.
 

 The decree must, therefore, be reversed, and the bill
 
 *381
 
 dismissed with costs in this court; but, for greater
 
 caution}
 
 without pejudice to any bill to be brought by the plaintiff hereafter.
 

 Pee Curiam, Bill dismissed, without prejudice.